THE ATTORNEY-GENERAL, EX REL. HAIGHT, v. JAMES H. LOVE.

When no time is fixed by law for the commencement of an official term, it begins to run from the date of the appointment.

In error to Supreme Court.

For opinion of the Supreme Court see *ante* p. 14.

For the plaintiff in error, *J. B. Vredenburgh* and *J. Vanatta.*

For the defendant, *Gilbert Collins.*

The opinion of the court was delivered by

Van Syckel, J.   This was the ordinary proceeding by *quo warranto*, instituted in the Supreme Court, to test the right of the defendant to the office of city collector of Jersey City.   The judgment of the Supreme Court having been adverse to the relator, has been brought here for review.

By the information filed in this cause, it appears that the defendant was appointed city collector under the charter of Jersey City, passed March 31st, 1871, for the term of one

year from May 21st, 1872, at which time he was duly qualified, and assumed the duties of the office.

That on the 24th of March, 1873, the legislature passed a supplement to the charter of Jersey City, by the forty-second section whereof it was provided as follows:

"SEC. 42. *And be it enacted*, That the new board of finance and taxation shall appoint a collector of revenue, to be called the city collector, who shall hold his office for the term of three years, and may be removed by said board for cause, and who shall receive an annual salary of five thousand dollars, and give bonds for the faithful performance of his duties in such sum as the board of finance and taxation shall approve; and the term of office of the present city collector shall expire as soon as the collector designated under this act is appointed and qualified."

That under this section the defendant was, on the 10th of April, 1873, appointed city collector for the term of three years, by the board of finance and taxation; that he took the oath of office April 14th, 1873, and gave bond for the faithful performance of his official duties, on May 15th, 1873; that on April 6th, 1876, he was again appointed to the same office for a further term of three years, under which appointment he took the official oath April 7th, and put in his official bond April 8th, 1876.

The information denies the validity of the last appointment, upon the ground that the preceding term of the defendant did not expire until after April 14th, 1876, and that on or before April 12th, 1876, the term of office of three of the five members of the board of finance and taxation expired, in consequence of which fact that board had no right of appointment, and on the 13th of April, 1876, the board, composed of the two members holding over and three new members, rescinded the appointment of the defendant, and appointed the relator as city collector.

A demurrer, filed by the defendant, raises the question of his right to the office upon the facts in the information set forth.

The contest in this case will be settled by ascertaining the precise time when the defendant's term, under his appointment of April 10th, 1873, ended. His term, under the act of 1873, was for three years, and by determining when it commenced, its end will be three years from that date.

The relator insists that it did not begin until the expiration of the term that preceded it, which, by the supplement, was to expire when the officer designated under it was appointed and qualified; and that as the defendant, being so designated, did not qualify before April 14th, 1873, therefore his new term did not begin before that date, and, consequently, did not end before April 14th, 1876, prior to which date the new members of the board of finance came into office.

The defendant, under his appointment of 1872, in the absence of the supplement of March, 1873, would have held his office until May 21st, 1873.

That supplement had a threefold object:

1st. To legislate the then incumbent out of office before the expiration of his term, which was accomplished by giving the board power to appoint his successor, with the right of entering at once upon its duties.

2d. To enlarge the term to three years.

3d. To enable the then incumbent to continue his official functions until a new officer was appointed and qualified.

No date being expressly fixed for the commencement of the new term, it must be governed by some general principle applicable to it. It is apparent that if his term did not begin to run until he was qualified, he could, in the absence of any restraining legislation, have prolonged his prior term indefinitely by his own neglect to qualify. Public policy would forbid the adoption of a rule under which such a result is possible. It would make the beginning of an official term to depend upon the will of the appointee, instead of that of the appointing power, and thus enable him to enlarge the term of his predecessor without shortening his own, or, where he

was his own successor, he would be the constant gainer by his continued neglect to qualify.

In *State* v. *Constable*, 7 *Ohio* 7, it was held that when no time is mentioned in the law, from which the term shall commence, it must begin to run from the day of election.

In the United States service, so completely is the office deemed to be supplied by an appointment before acceptance, that in *Marbury* v. *Madison*, 1 *Cranch* 137, Chief Justice Marshall says that when a person appointed to any office refuses to accept, the successor is nominated in the place of the person who declined to accept, and not in the place of the person who had previously been in office, and had created the original vacancy.

The general rule that the term of an officer begins to run from the date of his election, is recognized in *Marshall* v. *Harwood*, 5 *Md.* 423, and in *Hughes* v. *Buckingham*, 5 *S. & M.* 632.

The beginning of a term of office ought not to be left to the will of the officer himself. If not fixed by law, it must begin as soon as he can, by his own act, enter upon it. This rule is clearly shown, in the opinion of the court below, to rest upon sound reason. The term of his predecessor was, by the terms of the act of 1873, made to continue until he actually entered on the duties of the office, but this is not inconsistent with the running of his new term at the same time. If he had not been his own successor, there could not have been any necessary clashing between them, for the moment he qualified and entered upon the duties of the office, the prior term ceased. By the thirty-seventh section of the charter of 1871, if he had failed to qualify for the space of ten days, he was to be considered as having declined the office, and the same was to be deemed vacant; yet, notwithstanding this, he would continue to discharge the duties of the office under the appointment of 1872, until a successor was qualified. Although he was to continue in the exercise of his functions, the office was, under such circumstances, declared to be vacant. There is no incongruity in the fact

of a vacancy for the purposes of a new election, and the actual holding by the former incumbent; nor is there any necessary incongruity in the running of the new term while the former incumbent is discharging the duties of the office. If the term for which the defendant was appointed in 1872, had been three years instead of one year, by the argument made on behalf of the relator, he would, in the absence of express restraint, have been entitled to refrain from qualifying until that term had fully run, and thus have enjoyed a term of over five years.

The act of 1873 does not declare that the term of the new appointee shall begin to run when the term of the then incumbent ended. It was not intended that the old term should run its full course; the contrary purpose was clearly indicated by the legislature, and power was given to the board of finance to cut off the term at once.

The question is not when the predecessor should cease to act, but when the new term commenced. That time was not specified by the statute, and therefore it must be either when the defendant chose to qualify, or within a reasonable time after his appointment in 1873, or at the date of his appointment.

The proposition to leave so important a matter to the volition of the officer himself is inadmissible. "A reasonable time" is indefinite, and will constantly lead to the difficulty which has now arisen, creating a conflict between outgoing and incoming boards. The date of the appointment, in the absence of legislation to the contrary, constitutes a certain and reasonable rule, which can result in no injustice to the person elected, and in no injury to the public service.

The case of *Jump* v. *Spence*, 28 *Md.* 1, cited for the relator, simply holds that Jump could not lawfully assume the duties of judge until he had complied with a provision of the state constitution, requiring him to take an official oath.

Cases are also cited to show that the appointee is not entitled to the emoluments of the office until he qualifies; but this is not the question involved here. It was the right of

the defendant to qualify at once, upon his appointment in 1873, and that he should lose his salary for the time he neglected to qualify and discharge his official duties, would be just, and thus the interest of the public and his own would concur in moving him to enter speedily upon his functions.

The only case cited by the relator in support of the position for which he contends, which is in point, is that of *Brodie* v. *Campbell,* 17 *Cal.* 11, and there is nothing in the reasoning of the court there which, in the absence of any adjudged case to support it, will lead me to accept the rule adopted in that case, in view of the consequences which must flow from its application.

Under this view of the law, when the defendant, on the 10th day of April, 1873, was appointed for the term of three years, without any day being expressly specified for its commencement, the term to which he was lawfully entitled began on that day, and ended with the close of April 9th, 1876, and consequently the persons who composed the board of finance on the 6th day of April, 1876, had the right to select his successor.

In the second place, it is insisted that the new board had a right to reconsider and rescind the appointment of the defendant, because the action of the board of finance, in fixing the amount of and accepting his bond, had not been presented to the mayor for his approval or veto.

The charter of the city does not make the giving of a bond a condition precedent to the vesting of the title to the office, or to the right of the appointee to enter upon its duties. Until the board of finance declared that a bond should be given, and fixed its amount, the defendant was under no obligation to execute it. It is not necessary, therefore, to consider whether it was the duty of the board to submit their action with reference to the bond, to the mayor. They required the defendant to execute a bond; he complied, and the board accepted his bond, and he entered upon the duties of his office prior to April 13th, 1876. The power of rescission had then clearly ceased to exist. The failure of the

board of finance to perfect their action by submitting it to the mayor, if that was necessary, could not affect the defendant: he could not control, and was in no wise responsible for that.

In my opinion, the judgment below should be affirmed.

*For affirmance* — DALRIMPLE, DEPUE, VAN SYCKEL, WOODHULL, CLEMENT, GREEN, LATHROP, LILLY, WALES. 9.

*For reversal*—None.