ARTHUR M. BROWN, STATE'S ATTORNEY, EX REL. HARRISON GRAY, M.D.

vs.

ALBERT QUINTILIAN, M.D.

Superior Court    New London County    File #11492

Present: Hon. ALLYN L. BROWN, Judge.

Lee R. Robbins,
Richard L. Norman,    Attorneys for the Plaintiffs.

Charles V. James,    Attorney for the Defendant.

121 Conn. 300    MEMORANDUM FILED DECEMBER 5, 1935.

BROWN, J. In this quo warranto proceeding to test the title to the office of Health Officer of the City of Norwich, the relator Gray claims it by virtue of County Health Officer Norman's appointment of him to the office on the morning of November 4th, 1935 under the provisions of §2405 of the General Statutes, Rev. of 1930, and the respondent Quintilian claims it by virtue of the confirmation by the Court of Common Council of the City, of Mayor Moran's nomination of him to the office, on the evening of the same day and under the

provisions of the same statute. This statute provides among other things for the nomination by the mayor of a city, of a city health officer to hold office for four years, such nomination being subject to confirmation or rejection by the court of common council of such city. It also provides that "in case of vacancy in the office of such health officer, if such vacancy shall exist for thirty days, the county health officer . . . . shall appoint a health officer for such city . . . . ." Since it was under this clause that the appointment of the relator was made, the vital question to be determined is whether a vacancy had existed for thirty days when Mr. Norman made his appointment on November 4th, 1935.

In his brief, the respondent lays considerable stress upon the rule of construction as to statutes prescribing a period of time, as the term of office here, that the day of the date of appointment, that is, "the day of the act from which a future time is to be ascertained should be excluded." **Blackman vs. Nearing, 43 Conn. 56, 60.** In the view which I take of the situation presented upon the facts stipulated here, this is not of controling importance, and I adopt it for the purposes of this decision without further discussion. Further I conclude that "appointment" by the mayor and common council under the statute involves the concomitant action of both to be effective. This is the kind of designation or choice required. **Bouvier's Law Dictionary.** And "an appointment is complete when the last act required of the appointing power has been performed." **Coogan vs. Barbour, 53 Conn. 76, 85; II Mc-Quillin Municipal Corporations 129, §484 and Note 61.** But in view of the facts here, the very significant question remains to be determined with relation to an appointment from this source, of what the statute means by the words: "Each such health officer shall hold office for the term of four years **from the date of his appointment,**" and particularly by these words which I have underscored **(bold type).** Paragraph 2 of the Stipulation as to Facts shows that the relator "was nominated for City Health Officer for four years from October 1, 1931, by Mayor Robbins on October 5, 1931, at a regular meeting of the Court of Common Council held . . . . on said day, and said nomination was confirmed by said Court of Common Council." While the decisions indicate that a prior appointment, to take effect at a later date specified, is effective **(Eberle vs. Clark, 87 Conn. 537, 548 and 9 and cases cited),** does the same hold true as to a subsequent one to relate back to an

earlier date as here? To be more concrete, was the relator's term so instituted for four years from October 1, 1931, or for four years from October 5, 1931? That the former was the intention of the Mayor and Court of Common Council seems clear, and that the relator relying thereon functioned under the appointment for a second term of four years is unquestioned. Did the Court of Common Council, upon the Mayor's nomination, have the power and authority to make such an appointment, effective as of a date prior to its own formal vote thereon?

Neither party in his brief cites any decisions in point upon this precise question but I am satisfied under the authorities, that the answer to it, depends upon whether or not the beginning of the term in question was fixed by law. "The term of office begins from the time, if any, fixed by law, not necessarily from the date of appointment or qualification. The general rule is that where no time is fixed by the constitution or statute, the term begins . . . . in the case of appointive offices on the date of appointment. But it is only where the constitution or statute fails to prescribe when the term of office shall begin that it begins on . . . . appointment." 46 C.J. 965, §104d; Bruce vs. Matlock, et al, 111 S. W. Rep. 990, 991; Whitney vs. Patrick, 120 N.Y.S. 550, 553. While §2405 of the General Statutes above referred to, as to the term of city health officer, provides only that it shall extend for the period of "four years" as already recited, and does not specify when it shall begin, an examination discloses that the statute in its original form was passed as Chapter 145 of the Public Acts of 1895, and was amended by Chapter 242 of the Public Acts of 1897. Section 1 of the latter act provides: "The health officer of every city or borough shall hold office for the term of four years from and after the date of his appointment; said term to begin with the health officer first appointed by said city or borough after the passage of this law," and §4 that: "All acts or parts of acts inconsistent herewith are hereby repealed." As appears by the Supplemental Stipulation of Facts, Dr. W. K. Tingley was the health officer first appointed by the City of Norwich after the passage of the 1897 Act, and his appointment, pursuant to which he discharged the duties of the office for the term prescribed, was "for four years from the first Monday of October 1899," which was October 2, 1899. (1899-1900 Council Journal, pg. 76.) Pursuant to the express provisions of §1 of the

**1897 Act** therefore, this appointment of Dr. Tingley fixed October 2, 1899 as the date from which the four year terms of the city health officer must subsequently be calculated. And I further conclude that the beginning of such terms was thereby just as effectively "fixed by law" as though the date had been expressly specified in the statute. Therefore, under the authorities above quoted, the confirmation of Mayor Robbins' nomination of the relator on October 5, 1931 for a further term of four years, was effective to make him city health officer for a term ending at midnight on October 2, 1935.

Nor does the fact that the part of §1 after the semicolon, as above quoted, was omitted from the next reenactment of the statute as **§2532 of the Revision of 1902,** call for a dif-erent conclusion. Apparently the sentence so omitted was felt by the revisers to have served its purpose by establish-ing the date of commencement of the health officer's terms for the future, and to be better omitted for the sake of brevity, the reasonable presumption being that in the future reappointments would ensue to fill each term as it expired. And the **Council Journal** Incorporated in the Supplemental Stipulation of Facts reveals that such was in fact the course followed in appointing to fill the seven terms intervening between that of Dr. Tingley and the first term of the relator. The reasonable interpretation of the statute as revised, in the light not only of its precise wording, but of its history above outlined and the other circumstances, supports the same conclusion. Should it be held, however, that this wording of the statute in the **Revision of 1902,** which is in substance that of the present statute in this particular, so militates against the reasoning above advanced as to be insufficient to support this conclusion, in the light of further facts contained in the Stipulation, the application of another principle of law leads to an identical result.

If the form which the statute took in the **Revision of 1902** be deemed an effective repeal of the sentence of **§1 of the 1897 Act** fixing the beginning of the term by the first appoint-ment made thereafter, and so rendered that provision of no further effect, **§2532 of the Revision of 1902** must be inter-preted as a new statute taking effect for the first time upon its adoption by the legislature. What then is the effect of its only provision as to tenure, that the appointee "shall hold

office for the term of four years from and after his appointment"?

"Where the law prescribes the length of the term and designates the person in whom is vested the power to fill a public office by appointment, but no date is fixed for the beginning or ending of the term, . . . . the appointive power has the right to fix the commencement of the term, and when the same is fixed by the appointment first made, all subsequent terms of office necessarily have reference to such initial period, and each term commences at the end of the preceding term." 22 R.C.L. 551, §251; 46 C.J. 965, 2100 (L); State vs. Williams, 222 Mo. 268; 121 S.W. Rep. 64; 17 Ann. Cases 1006; Atty. General vs. Love, 39 N.J.L. 476; 23 Am. Rep. 234. The true rule is to construe the word 'term' as designating consecutive periods of four years each here, "following each other in regular order, the one commencing where the other ends, and treating the incumbent appointed in any such period as the incumbent in the particular term or period to which the appointment relates, his office expiring with the expiration of his term." People vs. McClave, 99 N.Y. 83, 93; 1 N.E. Rep. 235.

Applying this rule to the facts stipulated, as already stated the appointment of City Health Officer made in 1899 was of Dr. Tingley for four years from October 2, 1899. The next appointment made is recorded at **page 19 of the 1903-4 Council Journal** in these words: "On motion of Councilman Harvey the nomination of Napoleon B. Lewis as City Health Officer was confirmed." This relates to action taken at an adjourned meeting of the Council held on June 11, 1903 and obviously took effect upon the expiration of Dr. Tingley's term at midnight on the following October 2, 1903. That such was the effect of this appointment is substantially confirmed by the Council's action in reappointing Dr. Lewis for a second term at its meeting held June 12, 1907 when his nomination as health officer was confirmed "for four years from October 1, 1907." **Page 30, 1907-8 Council Journal.** The Council's confirmation of the several nominations to the office of health officer since that time also support the same conclusion. Under the authority quoted in the preceding paragraph therefore, it is clear that by this line of reasoning also the relator's first term as health officer ended at midnight on October 2, 1931 and his second term at midnight on October 2, 1935.

Therefore at midnight of November 1, 1935 a vacancy in the office of health officer of the City of Norwich had existed for thirty days. Nor does the fact that the relator discharged the duties of the office for a part or all of this period call for a different conclusion, for a very recent pronouncement of the Supreme Court of Connecticut makes clear that a **de jure** as distinguished from a **de facto** vacancy is what is determinative in such a situation. **Alcorn, ex rel. Hendrick, 120 Conn.; citing also Eberle vs. Clark, 87 Conn. 537, 547; 46 C.J. 968, 1058; 22 R.C.L. 598.** Accordingly on November 4, 1935 when County Health Officer Norman appointed the relator health officer of the City of Norwich for the term of four years, he was fully authorized so to do under the provisions of §2405 **of the Revision of 1930.** Nor does the fact that by an inaccuracy of statement his letter to the relator **(Exhibit Z)** refers to the term as ending "four years from the first Monday of October, 1935," instead of "from October 2, 1935," render his act nugatory and of no effect. I find that the effect of the appointment so made was to make the relator health officer of the City of Norwich for the term of four years ending at midnight of October 2, 1939. For the reasons stated in the second paragraph of this Memorandum, Mayor Moran's letter of October 30, 1935 to the respondent "appointing" him to the office for four years was entirely ineffective, the same not having been confirmed by the Court of Common Council until after the effective appointment of the relator by the County Health Officer as already stated had been consummated.

Judgment is ordered entered in favor of the relator and that he is the duly and legally appointed and qualified Health Officer of the City of Norwich for the term of four years ending at midnight of October 2, 1939, and that the respondent has no right, title or interest in or to said office.