# GEORGE WELLS *vs.* FRANK A. MUNROE AND OTHERS, SUPERVISORS OF ELECTIONS, ETC.

*Elections and Voters—Mandamus to Supervisors of Election Directing Name of Candidate to be Printed on Official Ballot—Clerk of Court—Contested Election—Vacancy in Office.*

Under the Act of 1896, ch. 202, requiring the Supervisors of Election of a county to print upon the official ballot the names of all persons nominated in the manner specified for an office to be voted for by all the voters of a county, the duty of the Supervisors is not discretionary, and their action in the premises may be controlled by *mandamus*.

If there is a vacancy in an office to be filled at a certain election and a person has been duly nominated therefor, the Supervisors may be compelled by the *mandamus* to put his name upon the official ballot. But the writ would not be issued if there was in fact no vacancy in the office to be filled.

Constitution, Art. 4, sec. 25, provides that the Clerks of the Circuit Courts for the counties shall be elected by the people and hold their offices for the term of six years, and that in case of a vacancy, the Judges shall fill the same until the next general election for the Legislature. Art. 4, sec. 12, provides that the election of a Clerk may be contested before the House of Delegates, and that if the judgment be against the one returned elected or commissioned by the Governor, the House shall order a new election within thirty days. After an election held in November, 1895, W. was returned as elected Clerk of the Circuit Court for Anne Arundel County, commissioned as such by the Governor and entered upon the discharge of the duties. The election was contested by his opponent, and in March, 1896, the House of Delegates adopted a resolution declaring that W. was not duly elected, and ordered a new election to held on April 21, 1896. In consequence of a change in the machinery of the election laws made by the Legislature the special election so ordered could not be held, and W. continued in office. In August, 1897, W. was renominated for the office by his party, but the Supervisors of Election refused to put his name on the ballot of persons to be voted for at the election to be held in November, 1897, the next general election after the contest, alleging that there was no vacancy to be filled. Upon a petition for a writ of *mandamus* against them, *Held,*

1st. That W. was legally in possession of the office under his commission, but only as a temporary *locum tenens* until a Clerk should be elected by the people as required by the Constitution.

2nd. That the resolution of the House of Delegates annulling the election of November, 1895, did not create a vacancy in the office of Clerk which could be filled by the Judges under Constitution, Art. 4, sec. 25, because the vacancy there contemplated is one that occurs after a valid election has been held.

3rd. That the vacancy in the office was such as should be filled at the next general election after the resolution of the House of Delegates, which was that taking place in November, 1897, and that the petitioner was entitled to the writ.

4th. That the person then elected Clerk would hold office for the term of six years.

Appeal from an order of the Circuit Court for Anne Arundel County (Revell, J.), dismissing appellant's petition for a *mandamus*.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page, Roberts and Boyd, JJ.

*Dennis Claude* and *Robert Moss*, for the appellant.

*John Prentiss Poe* and *James M. Munroe*, for the appellees. The general result of the adjudications is :

1. That the appellee, by virtue of his commission, is entitled to his office for six years and until his successor shall be duly elected and qualified.

2nd. That in case of a contested election for Clerk of a Circuit Court, the House of Delegates has no power to do more than to decide the contest and to order a new election within thirty days from such decision, if it shall determine that the person returned elected and commissioned by the Governor was not duly elected.

3rd. That its action declaring the incumbent not duly elected and ordering a special election does not oust the actual incumbent or create a vacancy, but leaves the incumbent in office under his commission *until such special election shall be held*.

4. That the failure to hold such election does not create a vacancy, but renders the action of the House of Delegates as completely inoperative as if it had not ordered such special

election, and necessarily, therefore, does not in any degree
or to any extent affect or impair the appellees' title to his
office under his commission, which stands as if no contest
had been made.

5. That the mode provided by the Constitution in such
a case as this, viz., for the holding of a *special* election
within a designated time necessarily negatives the right or
power to hold a general election at a *different* time for the
filling of a *supposed vacancy*, which does not exist.

6. That accordingly no election can lawfully be held on
November 2nd, proximo, in Anne Arundel County, for the
office of the Clerk of the Circuit Court, and consequently,
that the appellees' refusal to cause the name of the appel-
lant to be printed on the official ballot was correct.
*Thomas* v. *Owens*, 4 Md. 225; *Cantwell* v. *Owens*, 14 Md.
215; *Magruder* v. *Swann*, 25 Md. 215; *Brooke* v. *Widdi-
combe*, 39 Md. 402; *Groome* v. *Gwinn*, 43 Md. 624; *Robb*
v. *Carter*, 65 Md. 335; *Ijams* v. *Duvall*, 85 Md. 252;
*Archer* v. *State*, 74 Md. 427; *Ash* v. *McVey*, 85 Md. 119.

PAGE, J., delivered the opinion of the Court.

This proceeding was instituted for the purpose of obtain-
ing a *mandamus* directing the Supervisors of Anne Arundel
County to receive the certificate of the nomination of the
appellant for Clerk of the Circuit Court and to place his
name as a candidate for that office on the official ballot, to
be voted at the election to be held in Nov., 1897. In view
of the urgency of the case, we have already rendered our
judgment, reversing the order below, and we will now pro-
ceed to give the reason for our action. There is no dispute
as to the facts of the case, as stated in the petition. They
may briefly be stated as follows : At the general election in
Nov., 1895, Dr. George Wells was duly returned elected
Clerk of the Circuit Court for Anne Arundel County for the
full term of six years, and was duly commissioned by the
Governor, and bonded and qualified and entered upon the
discharge of the duties of the office and has so continued to

the present time. His election, however, was contested by Dr. Washington G. Tuck, and on the 24th of March, the House of Delegates passed the following resolutions :

" Resolved by the House of Delegates of Maryland, That at an election held on the 5th day of November, 1895, for Clerk of the Circuit Court for Anne Arundel County, George Wells was not duly and legally elected Clerk of the Circuit Court for Anne Arundel County."

"Resolved by the House of Delegates of Maryland, That an election for Clerk of the Circuit Court for Anne Arundel County be and the same is hereby ordered to be held on the 21st day of April, 1896, in pursuance of section twelve of Article four, of the Constitution."

The special election thus directed, however, could not be held for the reasons stated by this Court in the case of *Munroe and Others* v. *Wells,* 83 Md. 505. In August, the petitioner was nominated for the office of the Clerk of Anne Arundel County, by a convention of the Democratic party, and a certificate thereof in due form of law was filed with the Supervisors of Election of Anne Arundel County. The Supervisors, however, refused to place his name upon the official ballot ; the reason therefor, being, as appears from their answer to the petition, that there was no vacancy in the said office.

It is contended that these facts do not present a case for a *mandamus,* because the power of the Supervisors with respect to the placing of names upon the judicial ballot is discretionary. The rule in regard to the powers of the Court to issue *mandamus* is too well settled to require the citation of authority. In *Green* v. *Purnell,* 12 Md. 336, it is stated as follows : " It cannot issue in a case where discretion and judgment are to be exercised by the officer, and it can only be granted when the act required to be done is merely ministerial, and the relator without adequate remedy."

Now, what was the duty of the Supervisors, in respect to a case like this ? By the 36th sec. of the Act of 1896, ch. 202, any convention and primary meeting held for the pur-

pose of making nominations to public office " may nominate candidates for public office, to be filled by election within the State." All nominations so made, shall be certified as provided by the 37th section ; and by the 39th section such certificates shall be filed for the nomination of candidates for Congress, State offices, and offices of any division greater than a county, with the Secretary of State, and certificates of nomination for all other offices, with the Supervisors of Election of the respective counties or of the city of Baltimore, as the case may be. Not less than eighteen days before the election the Secretary of the State must certify to the Supervisors of Election of each county, or of the city of Baltimore, within which any of the voters may by law vote for candidates for such office, the name and description of each person nominated for such office, as specified in the certificate of nomination filed with the Secretary of State, sec. 43 ; and eight days before the election, publish " the nominations to office, which have been filed with or certified to them under the provisions of this Article." By the 49th section it is made their duty " to cause to be printed on the ballot the name of every candidate whose name has been certified to or filed with the proper officers, in the manner herein provided for ;" and by the 50th all ballots shall contain the name of every candidate whose nomination for any office specified in the ballot has been " certified to and filed " according to the provisions of the Article. There are other provisions relating to the preparation of the official ballot, but nothing therein contained, in any wise, varies the clear intent of the Legislature to be gathered from those we have cited. It is manifest it was not the purpose to invest the Supervisors with any discretion as to what names should be placed upon the official ballot. It will not for a moment be contended that the Supervisors can reject any of the nominations certified to them by the Secretary of State, under the forty-third section, because in their opinion there were no vacancies in the offices for which such nominations were made. Nor is there any authority to

be found anywhere in the statute investing them with power to act differently in respect to nominations certified from a convention or a primary meeting. Where the nominations come to the Supervisors, from the proper sources, certified in the proper manner, as the law provides, it is their plain duty to place the names certified to on the ballots ; and all ballots shall contain every such name.

The Court below, therefore, had full jurisdiction to entertain this proceeding. But for all that, it will not do a nugatory Act, but will refuse the writ if it be manifest that it can have no beneficial effect. *State ex rel. Henderson* v. *Taylor*, 59 Md. 338. If there is no vacancy in the office of Clerk of the Circuit Court for Anne Arundel County and no such officer was legally to be elected at the election to be held in the month of November, 1897, the Court will not direct the name of a nominee for that position to be placed on the ballot. *Worman* v. *Hagan*, 78 Md. 163.

The next question that is presented, therefore, is, was there such a vacancy in that office as must be filled by the voters of the county at the approaching election ? The counsel for the appellees insist that the decision of this Court in the case of *Ijams* v. *Duvall*, recently decided (85 Md. 252), is conclusive of this controversy. But we cannot concur in this view. In that case, as in this, Duvall had been duly commissioned by the Governor and had entered upon the discharge of his duties. His election was contested by Ijams ; and the House of Delegates decided that Duvall had not been duly elected, and ordered a new election, which could not be and was not held. Thereupon the Governor, regarding the office as vacant within the meaning of sec. 40 of Article 4 of the Constitution, appointed and issued a commission to Ijams, who on the refusal of Duvall to surrender the office to him, applied for a *mandamus*—so that the question in that case was whether there was such a vacancy in the office as enabled the Governor to appoint some other person to fill it. In its decision the Court discusses the nature of the " vacancy " referred to in

the section 40 of Art. 4, and holds it to be a vacancy occurring after an election by the people " created by death, resignation, or by some other cause, of one or more of the three men who had been chosen by the qualified voters." What was decided by that case was, that the Governor had no power to appoint a successor to Duvall, because there was no vacancy within the meaning of the only section of the Constitution that conferred upon him the authority to make such appointment.

In the case at bar the question is, is there such a vacancy in the office as must be filled by the election of the people ? Upon being returned elected Dr. Wells received his commission from the Governor, and duly qualified and entered on the discharge of his duties ; and these facts alone conferred upon him a valid title to the office. *Brooke* v. *Widdicombe*, 39 Md. 402. This title, however, is not that conferred by the Constitution on one who has been elected by a plurality of the qualified voters, under the 25th sec. of Art. 4 of the Constitution. To the House of Delegates, under sec. 12, Art. 4, is confided the power and authority to decide upon the election and qualification of candidates for this office, and its decision, that the appellant " was not duly and legally elected Clerk, etc.," at the election of November, 1895, must be taken to be decisive. Dr. Wells, therefore, was not entitled under the Governor's commission to a term of six years, which under section 25 can only begin " from the time of his election." Whatever rights he acquired to the office were derived solely from the Governor's commission and his qualification. *Jump* v. *Spence*, 28 Md. 1; *Brooke* v. *Widdicombe (supra)*.

The commission could not confer upon him the rights of an officer elected by the voters ; it in fact entitled him after qualifying, to hold the office only temporarily as a *locum tenens*, until his successor was properly and legally appointed and qualified. *Robb* v. *Carter*, 65 Md. 334.

How shall such successor be chosen in accordance with the provision of the Constitution ? Under the circumstances

of this case it is not within the power of the Judges to appoint; the "vacancy" contemplated by the 25th sec. of Art. 4 being one that occurs after an election by the voters. The reasoning stated in *Ijams* v. *Duvall* applies here, and is decisive of the point.

The general intent of the Constitution when all its provisions applicable to the subject are regarded, is manifest, that Clerks of all Courts in the State shall be elected by the people. All the sections relating to the terms of their offices provide for a term beginning from the " time of his election." By sec. 17, Art. 4, the Clerk of the Court of Appeals holds his office " for the term of six years from the time of his election." The same language is employed in sec. 37, Art. 4, relating to Clerks of the Courts of Baltimore City ; and by sec. 25, Art. 4, Clerks of the Circuit Court for the counties hold their offices for six years from the time of their election. Moreover, the policy of the Constitution is clear, that in cases of vacancy where the Judges have power to fill the same, their appointments hold only until the next general election for delegates to the General Assembly, "when a successor shall be elected for the term of six years." So, if there be a contest and the judgment be against the one who has the commission of the Governor, the House of Delegates is to refer the matter again to the voters by ordering a "new election within thirty days." It is therefore clearly contrary to the spirit of the Constitution that one who has been declared not to have been duly elected by the House of Delegates, the Judges designated by the Constitution to settle the matter, shall . yet hold the office for the full term of six years, when the legal right to such a term can only accrue in consequence of an election by the legally qualified voters. The last clause of sec. 15, Art. 4, " if the judgment shall be against the one who has been returned elected or the one who has been commissioned by the Governor, the House of Delegates shall order a new election within thirty days," was inserted for the purpose of securing a reference of the matter to the people at an earlier

period than that of the next general election ; in fact, for the purpose of so referring it at the earliest day practicable.

Under the present Constitution the House has no power to decide who is elected and entitled to the term, differing in that respect from the preceding Constitution.   The duty of the House of Delegates is now only to judge of the election and qualification of the candidates and to order a new election, if the decision be against the one who was returned elected, thus emphasizing the general intent, that all Clerks shall hold their offices only by an election by the people, except in cases where necessity requires a temporary appointment, until the will of the people can be expressed.   If these views be correct, while there was no vacancy in this office, Dr. Wells holding it temporarily under the commission of the Governor until his successor was duly appointed and qualified, no one having been duly elected, there is no one entitled to the term provided by the sec. 25 of Art. 4.   But this section also provides " there shall be a Clerk of the Circuit Court for each county, who shall be elected by a plurality of the qualified voters of said county and shall hold his office for six years from the time of his election, and until his successor is elected and qualified, etc."

We are therefore of the opinion that by the spirit and intent of the Constitution there is such a vacancy in the office, as to make it necessary and proper than an election for the office shall be held at the earliest possible moment.   If it could not be held at the time the House of Delegates appointed, there are no reasons why it cannot be held at the general election on the day designated by sec. 7 of Art. 15. If such election be held, it is obvious the person elected would not take a fragment of a term.   Dr. Wells, as we have said, has not been holding for any part of the term designated by sec. 25 of Art. 4, but temporarily only, until a term should legally begin.   The person elected therefore would be entitled to the full term of six years from

the time of his election. For these reasons the order was reversed.

*Order reversed.*

(Decided *per curiam* October 20th, 1897. The foregoing opinion .was filed December 1st, 1897).